NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0536n.06

Case No. 18-5472

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

Oct 18, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| APRIL WEST, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: CLAY, STRANCH, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. During a traffic stop, April West told a police officer that she was concealing drugs on her person. The officer asked her to turn over the drugs and she complied. West now claims that she did not do so voluntarily because the police had, by that point, created an "inherently coercive environment" in violation of the Fourth Amendment. But the district court's fact-findings rejected her coercion allegations, and our standard of review on appeal requires us to uphold the judge's finding that she voluntarily surrendered the drugs based on these facts. We affirm.

A magistrate judge—whose fact-findings we review for clear error, *United States v. Wandahsega*, 924 F.3d 868, 878–79 (6th Cir. 2019)—found the following: On August 12, 2016, police officers in Morristown, Tennessee, received a tip that West was heading to Knoxville to

buy drugs and would be returning back home to Morristown later that day. On the lookout for West that evening, officers spotted her as she neared her neighborhood. They attempted to pull her over for speeding, but West initially ignored the flashing lights. After a "low-speed" pursuit, police cruisers boxed in West's car about a block and a half from her home.

The officers who approached the vehicle had a brief exchange with West about why she had not stopped. She handed over her driver's license and asked to smoke a cigarette. An officer told her that she could and directed her to step out of the car. Detective Pete Shockley asked West for consent to search the car, which she "promptly gave." A few minutes later, a police dog alerted to the presence of narcotics near the driver's side door. When searching the vehicle, officers found two cell phones, a GPS unit, and West's purse, but no drugs. West also gave the officers permission to search her purse. It contained $1,064 in cash, but again no drugs. "Throughout the time that the officers searched her vehicle," a dash camera on a police cruiser "depicts West walking around, engaging in discussion with officers, and also laughing with officers."

After about 30 minutes, Shockley spoke with West at the back of her car. He told her that the police knew that she had gone to Knoxville to buy drugs. West responded that she would like to talk with Shockley apart from the others. They moved out of range of the dash camera. (Shockley was unaware they were out of the camera's line of sight, and he and West remained in view of the other officers.) West told Shockley that she did not want to go back to prison (she had just served six years on a drug-trafficking conviction) and that she had drugs "inside her body." Shockley asked her to remove the drugs and place them on the ground. West agreed. Shockley turned his back, and West placed a bag with drugs on the ground. All told, the bag held 19.2 grams of crack cocaine, 1.2 grams of methamphetamine, and 67 pills consisting of morphine, oxycodone, valium, and other narcotics.

2

West was indicted for possession with intent to distribute the crack cocaine. She moved to suppress the drugs. At a suppression hearing before the magistrate judge, West's counsel clarified that she sought to challenge only "the illegal search of the person of Ms. West."

At this hearing, Shockley and West gave different accounts of their conversation. According to Shockley, after he advised West at the back of her car that the police knew she had procured drugs, she asked to speak to him privately and volunteered that she had the drugs on her person. According to West, she asked to speak to Shockley privately only after he had yelled at her for several minutes at the back of her car. West claims that Shockley threatened, among other things, that he would call her probation officer, that the police would get a warrant and take her to the hospital to take the drugs out, and that she would get no deal if they were forced to do so.

The magistrate judge recommended denying West's motion. The judge rejected her claim that officers had coerced her into "admit[ting] to possessing and producing the narcotics," finding that the "video directly contradicts her testimony that officers were threatening her during the search." Instead, West was "smoking, talking with [officers], joking with them, smiling, walking around freely, folding up some articles of clothing she had removed from the trunk, and looking in the car for a bottle of water." The magistrate judge also highlighted that West initiated the private conversation with Shockley and that West conceded at the suppression hearing that she had done so "to discuss the drugs with him."

The magistrate judge noted that objections were due within 14 days or else "further appeal will be waived." West filed a timely two-page objection, but asked only for a de novo review of her suppression motion. The district court found that West "failed to raise any specific objections" as required by rule. The court instructed her to file specific objections and told her it would "summarily overrule[]" her general objection if she did not. West did not supplement her

objection, so the court adopted the magistrate judge's recommendation. The court added that it had, in any event, reviewed the motion and the record de novo and agreed with the magistrate judge's conclusions on the merits.

West pleaded guilty a few months later. She received a below-guidelines nine-year sentence. She now appeals the district court's rejection of her Fourth Amendment claim.

We start with a detour: The government argues that West forfeited this claim by failing to properly object to the magistrate judge's report and recommendation. A defendant who fails to object usually has no right to challenge the magistrate judge's conclusions on appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); Fed. R. Crim. P. 59(b)(2). And a "general objection to the entirety of the magistrate's report has the same effect[] as . . . a failure to object." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Under these rules, we would normally refuse to consider West's arguments. But there is a wrinkle: West's plea deal reserved her "right to appeal the Court's Order . . . approving the Report and Recommendation of the United States Magistrate Judge . . . denying the defendant's motion to suppress." She claims that this provision—when combined with the district court's de novo review of her motion and assurance at her plea hearing that she reserved her right to appeal—excuses her failure to object.

We think it easier to evaluate West's claim on the merits, which avoids the need to decide this forfeiture argument. The rule that a party must assert specific objections to a magistrate judge's report is not jurisdictional, *Thomas*, 474 U.S. at 155, so we face no duty to resolve the issue. And courts have adopted varied approaches when a party fails to properly object to a magistrate judge's recommendation to deny a suppression motion, but then enters a plea agreement that reserves the right to appeal that denial. We have at times exercised our discretion to excuse the forfeiture. *United States v. Lucas*, 640 F.3d 168, 173 (6th Cir. 2011); *cf. United States v.*

4

*Robinson*, 30 F.3d 774, 777 (7th Cir. 1994). At other times we have held that a defendant forfeits (or even "waives," Fed. R. Crim. P. 59(b)(2)) the right to appeal, despite the later plea agreement purporting to reserve the right. *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008); *cf. United States v. Gabel*, 470 F. App'x 853, 854 (11th Cir. 2012) (per curiam); *United States v. Cagle*, 314 F. App'x 617, 618 (4th Cir. 2009) (per curiam); *United States v. Buckbee*, 3 F. App'x 563, 564 (7th Cir. 2001) (order). And other courts have held that the government's actions in entering the plea deal amount to its own "waiver of the waiver" because it agreed that the defendant could appeal the issue. *E.g.*, *United States v. Delgado-Perez*, 867 F.3d 244, 250 (1st Cir. 2017); *cf. United States v. Loughren*, 239 F. App'x 289, 290 (7th Cir. 2007) (order).

Skipping this waiver issue, we proceed to the merits. The Fourth Amendment bars "unreasonable searches and seizures." U.S. Const. amend. IV. We begin by clarifying what West does and does not challenge as unreasonable. She does not challenge the initial *seizure*—a traffic stop for speeding. *Cf. Whren v. United States*, 517 U.S. 806, 809–10, 819 (1996); *United States v. Simpson*, 520 F.3d 531, 539–41 (6th Cir. 2008). She also does not challenge her consent to *search* her car as involuntary or coerced. *Cf. Schneckloth v. Bustamonte*, 412 U.S. 218, 248–49 (1973). And she does not challenge the length of the stop and search. *Cf. Rodriguez v. United States*, 135 S. Ct. 1609, 1614–15 (2015). As the magistrate judge explained, "at no point has West challenged the validity of her consent [to search the car] or that the search exceeded the scope of her consent or was conducted in an unreasonable period of time." Instead, West challenges only her conversation with Detective Shockley, asserting that she did not validly consent to turning over the drugs after speaking with him.

We assume, for purposes of this decision, that Shockley's request for West to turn over the drugs qualifies as a "search" under the Fourth Amendment, which avoids any need to opine on

5

that preliminary issue. *Cf. United States v. Street*, 614 F.3d 228, 233 (6th Cir. 2010). The search was nevertheless reasonable under the Fourth Amendment. A search is reasonable when it is supported by a warrant or an exception to the warrant requirement. *Kentucky v. King*, 563 U.S. 452, 459 (2011). The usual exceptions apply in this verbal-search context, *see, e.g.*, *United States v. Pope*, 686 F.3d 1078, 1083–84 (9th Cir. 2012), and those exceptions include voluntary consent, *see Schneckloth*, 412 U.S. at 219. And here, the magistrate judge found as a fact that West voluntarily produced the drugs without police coercion.

West disagrees. She argues that Shockley illegally "searched" her person because she "never felt free to leave" and "felt compelled to turn over the drugs." But her argument relies entirely on her own testimony, which the magistrate judge discredited. In particular, the judge gave no weight to West's claims that the police had coerced her into turning over the drugs based on dash-cam footage that showed she was "cooperative and nonchalant in her actions." Under the controlling standard of review, we typically will not second-guess that type of credibility determination. *See United States v. Smith*, 594 F.3d 530, 535 (6th Cir. 2010). West gives us no basis to do so here. Indeed, as the magistrate judge noted, the dash-cam video supports the finding that the police did not engage in coercive or threatening behavior.

We affirm.